NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2026 IL App (4th) 260289-U

NOS. 4-26-0289, 4-26-0290, 4-26-0291 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 21, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Miy. R., Mal. R. and Mia. R., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
|     Petitioner-Appellee, | ) | Nos. 23JA57 |
|     v. | ) | 23JA58 |
| Lakeia B., | ) | 23JA59 |
|     Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | John Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court's unfitness and best-interest findings were not against the manifest weight of the evidence.

¶ 2    Respondent mother, Lakeia B., appeals from the trial court's judgments terminating her parental rights to her daughters, Miy. R. (born May 2022), Mal. R. (born December 2020), and Mia. R. (born July 2018). On appeal, respondent argues the court's findings she was an unfit parent and it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence. For the reasons that follow, we affirm the trial court's judgment.

¶ 3                      I. BACKGROUND

¶ 4    The parental rights of the minors' father, Michael R., were also terminated during the proceedings below. He is not, however, a party to this appeal. The following is gleaned from the record as it relates to respondent.

¶ 5                              A. Petition to Terminate Parental Rights

¶ 6         In April 2025, the State filed a petition to terminate respondent's parental rights to the minors. The State alleged respondent was an unfit parent in that she failed to make reasonable progress toward the return of the minors to her care during a nine-month period following their September 5, 2023, adjudications of neglect, namely, July 1, 2024, to April 1, 2025 (750 ILCS 50/1(D)(m)(ii) (West 2024)). The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Illinois Department of Children and Family Services (DCFS) as guardian, with the power to consent to adoption.

¶ 7                                    B. Fitness Hearing

¶ 8         Over a two-day period in November and December 2025, the trial court conducted a fitness hearing. The following is gleaned from the evidence presented.

¶ 9         In June 2023, the minors were taken into the temporary care of DCFS following an incident of domestic violence between their parents. Officers observed both "fresh and healing" injuries on respondent. Respondent filed a verified petition for an order of protection against the minors' father. In the petition, respondent alleged being beaten with a table leg, belt, and hands. The petition was later dismissed because respondent did not appear for a hearing. The minors' father pleaded guilty to committing domestic battery against respondent.

¶ 10         In September 2023, the minors were adjudicated neglected after respondent admitted to having unresolved issues of domestic violence, which caused a risk of harm to the minors. They were then made wards of the court in October 2023.

¶ 11         It was recommended respondent complete certain services. The services included programs addressing domestic violence and parenting education. It was also recommended respondent cooperate with DCFS and its representatives and attend visits with the minors. The

minors' father was issued similar service recommendations.

¶ 12    Throughout 2024, respondent largely complied with the service recommendations. She completed a parenting program in January 2024. She completed a domestic violence program on July 16, 2024. She obtained stable housing and employment and attended visits with the minors, which went well.

¶ 13    The minors' father did not have similar compliance with the service recommendations. While he commenced a domestic violence program, he was unsuccessfully discharged in June 2024 and refused to cooperate with the minors' caseworker.

¶ 14    The minors' caseworker informed respondent that communication with the minors' father should not occur due to his lack of compliance with the recommended services. The caseworker explained continued interaction, especially if there was a romantic relationship, would prevent the minors from being returned to her care.

¶ 15    Sometime in mid to late 2024, the minors' caseworker learned of a police report in which the minors' father stated he was in a relationship with respondent. When confronted with the statement, respondent stated she relied upon the minors' father for support and would not keep the minors away from him.

¶ 16    Sometime in November or early December 2024, there was an incident where the minors' father was suspected of driving respondent to a visit. Respondent was observed exiting a vehicle that the minors' father was known to drive. When confronted about the matter, respondent stated her cousin drove her, but she did not provide the cousin's name or any other information. The minors' father testified he never drove respondent to a visit.

¶ 17    On December 3, 2024, the trial court conducted a permanency review hearing, at which respondent was present. The court found respondent "fit" based upon her compliance with

the service recommendations. The court's order noted respondent had completed a domestic violence program, but concerns persisted as to a possible ongoing relationship with the minors' father. The court ordered respondent to have no contact with the minors' father.

¶ 18    In January 2025, the minors' caseworker learned of phone calls between respondent and the minors' father. The minors' father was incarcerated in Tazewell County and McLean County in late December 2024. While in the Tazewell County jail, he placed 88 calls to respondent's cell phone, 72 of which were answered. The calls were recorded. The caseworker reviewed several of the recorded calls and confirmed the voices on the calls belonged to respondent and the minors' father. The recorded calls, which were introduced into evidence, began with statements identifying the minors' father as the caller. Respondent and the minors' father discussed various topics during the calls, but not the minors. They can also be heard arguing with each other. A call log from the McLean County jail, which was introduced into evidence, shows the minors' father placed several calls to the phone number associated with respondent. The caseworker believed the calls showed an ongoing relationship between respondent and the minors' father.

¶ 19    The minors' caseworker confronted respondent about the phone calls with the minors' father. At the first family team meeting where the issue was raised, respondent denied any contact. After the caseworker explained the calls were recorded, respondent persisted in the denial and demanded proof of the calls. The issue was raised at a second family team meeting, at which time respondent continued to deny any contact. When the issue was raised at a third family team meeting, respondent admitted to having contact with the minors' father. She asked what was expected of her and how she was to know who was calling her. The caseworker explained she was expected to either not answer the call or to end the call upon learning the identity of the caller.

¶ 20    Because of the contact with the minors' father and the later denials of said contact,

- 4 -

respondent's visits with the minors were changed from unsupervised to supervised, and respondent was referred to additional domestic violence and parenting programs. Respondent stopped attending visits for a short period because of the time it would take to get to them. When her attendance resumed, the visits went well, except for occasional difficulties with addressing behavioral issues. She also participated in supervised phone calls with the minors.

¶ 21 The minors' caseworker believed respondent's contact with the minors' father, along with her later denials of that contact and refusal to take accountability for her actions, showed she did not have the necessary skills and knowledge to safely parent the minors.

¶ 22 Based on this information, the trial court found respondent was an unfit parent as alleged in the State's petition to terminate parental rights.

¶ 23                              C. Best-Interest Hearing

¶ 24 Over a two-day period in December 2025 and February 2026, the trial court conducted a best-interest hearing. The following is gleaned from the evidence presented.

¶ 25 The minors had been placed with their foster mother since June 2023. The foster mother was 60 years old and in good health. She had helped raise respondent and maintained a relationship with the minors' extended family. The minors were thriving in their placement, and the placement met their needs. They were bonded to their foster mother. The foster mother was willing to provide the minors with permanency through adoption. The foster mother was also willing to continue the relationship between respondent and the minors. Although the foster mother's boyfriend, who was a cousin of respondent, initially lived with the foster mother and the minors, he moved out due to placement issues stemming from a prior domestic issue with the foster mother.

¶ 26 The minors were bonded to respondent and enjoyed being around her. Respondent

attended visits, during which she provided the minors with gifts and food, and was engaged in the service recommendations. She expressed a desire for the minors to be returned to her care. If that was not allowed, respondent did not object to the minors being adopted by their foster mother.

¶ 27    The caseworker believed it was in the minors' best interests to terminate respondent's parental rights.

¶ 28    The attorney for the minors' father proffered the father could be released from prison within a year due to good behavior.

¶ 29    Based on this information, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2024)), found it would be in the minors' best interests to terminate respondent's parental rights. The court entered written orders terminating respondent's parental rights to the minors.

¶ 30    This appeal followed.

¶ 31                    II. ANALYSIS

¶ 32    On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence. The State disagrees.

¶ 33                    A. Unfitness Finding

¶ 34    Respondent argues the trial court's finding she was an unfit parent is against the manifest weight of the evidence. In support, respondent emphasizes her compliance with the service recommendations.

¶ 35    The State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on

- 6 -

appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 36　　　　The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)). Section 1(D)(m)(ii) states, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of [neglect]." *Id.*

¶ 37　　　　"Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

This court has stated a parent has made reasonable progress when "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the [trial] court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 38　　　　In this case, the evidence showed the minors came into DCFS care due to domestic violence between their parents. It was recommended respondent and the minors' father complete domestic violence and parenting programs. Unlike the minors' father, respondent engaged in and

completed the recommended programs. Respondent was advised not to continue a relationship with the minors' father due to his lack of engagement in services and, after concerns of an ongoing relationship persisted, was explicitly ordered to have no contact with him. Despite this, respondent maintained a relationship with the minors' father, as evidenced by the phone calls in late December 2024. She then repeatedly lied to the minors' caseworker about the contact and did not take accountability for her actions. This resulted in additional recommendations for domestic violence and parenting services and the requirement of supervision during visits. As the trial court found, respondent's actions showed she had not learned the necessary skills and knowledge from completing the domestic violence and parenting programs to safely parent the minors and, therefore, required additional services, meaning it was unlikely the minors would be returned to her care in the near future. Given the information gleaned from the evidence presented, we conclude the unfitness finding based on respondent's failure to make reasonable progress toward the return of the minors is not against the manifest weight of the evidence.

¶ 39                                    B. Best-Interest Finding

¶ 40        Respondent also argues the trial court's finding it was in the minors' best interests to terminate her parental rights is against the manifest weight of the evidence. In support, respondent asserts the court failed to consider the low likelihood of the minors being exposed to more violence when living with her given, according to the Illinois Department of Corrections (DOC) website, their father has a projected parole date of November 8, 2032. Respondent also asserts the court failed to "meaningfully address" all the statutory best-interest factors.

¶ 41        The State must prove termination is in a child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL

App (4th) 190537, ¶ 33. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 42     When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2024). The focus is on the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364.

¶ 43     In this case, we initially reject respondent's assertion concerning the low likelihood of the minors being exposed to harm while in her care given their father's projected parole date. The trial court heard the minors' father could be released from prison within a year; it did not receive evidence of a projected parole date from the DOC website. We also reject respondent's assertion that the court failed to "meaningfully address" the best-interest factors. The record shows the court carefully reviewed the best-interest factors and addressed several in rendering the oral pronouncement of its decision. See *In re Janira T.*, 368 Ill. App. 3d 883, 894 (2006) (stating the trial court's mention of every best-interest factor is not required in rendering a decision).

¶ 44     Ultimately, the evidence showed the minors had been in foster care for over two years. Their needs were being met in their placement, and their foster mother was willing to provide them with permanency through adoption. Conversely, respondent had not shown an understanding of the skills and knowledge necessary to safely parent. As the trial court found, the minors' needs for permanency and stability supported termination of respondent's parental rights. Given the information gleaned from the evidence presented, we conclude the finding it was in the minors' best interests to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 45                    III. CONCLUSION

¶ 46          For the reasons stated, we affirm the trial court's judgment.

¶ 47          Affirmed.